# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNULFO M. ACOSTA,<br><br>                Petitioner,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>                Respondent. | CASE NO. 05-CR-1570 W<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**<br>**[DOC. 560]** |

Petitioner Arnulfo M. Acosta ("Petitioner"), a federal prisoner proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (*See Motion* [Doc. 560].) The United States of America ("Respondent") opposes. (*See Opp'n* [Doc. 569].)

The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1 (d)(1). For the reasons discussed below, the Court **DENIES** Petitioner's motion.

I. <u>BACKGROUND</u>

On September 8, 2005, a federal grand jury indicted Petitioner on one count of conspiracy to commit wire fraud under 18 U.S.C. § 371 and three counts of wire fraud

under 18 U.S.C. § 134. (*Opp'n. Ex. 1-6* [Doc. 569-1] at 4-13.) The indictment alleged that Petitioner was involved in a massive Ponzi scheme that ultimately defrauded 1700 investors of more than $40 million. (*Id.*)

On December 5, 2005, Respondent sent a settlement offer to Petitioner's appointed counsel, Kurt Hermansen. (*Opp'n Ex. 1-6* at 15-17.) The terms of the offer stated, in part, that the government would recommend a sentence at the low end of the guideline range if Petitioner plead guilty to violating 18 U.S.C. § 371. (*Id.* at 15.) The offer then said that "[Petitioner] must provide [Respondent] with a signed plea agreement by January 4, 2006, and must enter his plea on or before January 9, 2006. Otherwise, the offer shall be deemed withdrawn." (*Id.* at 16.) Although Hermansen advised Respondent that he communicated the settlement offer to Petitioner, (*Id.* at 19), Petitioner did not sign the plea agreement or enter a guilty plea by the January 9 deadline.

On April 20, 2007, Hermansen proposed a plea agreement where Petitioner would plead guilty to violating 18 U.S.C. § 371, as well as 26 U.S.C. § 7207.[1] (*Opp'n Ex. 1-6* at 21-23.) Respondent counter-offered with a plea agreement requiring Petitioner to plead to both 18 U.S.C. § 371 and 18 U.S.C. § 1001.[2] (*Id.* at 25-39.) On May 10, 2007, Petitioner accepted the counter-offer. (*See Motion Ex. A* [Doc. 560-1].) On December 11, 2009, this Court sentenced Petitioner to 87 months in custody, and entered judgment on December 23, 2008. (*Opp'n Ex. 1-6* at 41-44.)

On May 2, 2012, Petitioner moved to vacate, set side, or correct his sentence under 28 U.S.C. § 2255, arguing that but-for ineffective assistance of counsel, Petitioner would have accepted Respondent's first settlement offer, which carried a lesser maximum sentence than the plea agreement that Petitioner ultimately signed.

//

---

[1] The maximum statutory sentence resulting from these counts is six years.

[2] The maximum statutory sentence resulting from these counts is ten years.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal sentencing court is authorized to discharge or re-sentence a defendant if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. This statute is intended to alleviate the burden of habeas corpus petitions filed by federal prisoners in the district of confinement, by providing an equally broad remedy in the more convenient jurisdiction of the sentencing court. See United States v. Addonizio, 442 U.S. 178, 185 (1979); Hernandez v. Campbell, 204 F.3d 861, 864 n.4 (9th Cir. 1999).

The remedy available under § 2255 is as broad and comprehensive as that provided by a writ of habeas corpus. See United States v. Addonizio, 442 U.S. 178, 184-85 (1979). But this remedy does not encompass all claimed errors in conviction and sentencing. Id. at 187. A mere error of law does not provide a basis for collateral attack unless the claimed error "resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." Hamilton v. United States, 67 F.3d 761, 763-64 (9th Cir. 1995) (quoting United States v. Timmreck, 441 U.S. 780, 783-84 (1979)).

## III. DISCUSSION

### A. Petitioner's Ineffective-Assistance-of-Counsel Claim is Time-Barred

Petitioner argues that but-for Hermansen's failure to effectively communicate the terms of Respondent's first settlement offer, Petitioner would have accepted the offer's terms before the January 9, 2006 deadline. (*Motion* at 31.) Petitioner further argues that his § 2255 motion is timely-filed given the Supreme Court's recent decisions in Missouri v. Frye, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, 132 S. Ct. 1376 (2012). (*See Reply*.)

28 U.S.C. § 2255 imposes a one-year limitation to motions made under the statute. 28 U.S.C. § 2255(f). The limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in the violation of the Constitution or the laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. Petitioner argues his claim is timely under subsection 3, contending that the Supreme Court's decisions in Frye and Lafler constitute new rules of constitutional law. (*See Reply*.) Petitioner's argument is unavailing.

In Buenrostro v. U.S., 697 F.3d 1137, 1140 (9th Cir. 2012), the Ninth Circuit held that neither Frye nor Lafler could form the basis for petitioner's second or successive motion because neither case decided a new rule of constitutional law. The Ninth Circuit found that Frye and Lafler "did not break new ground or impose a new obligation on the State or Federal government," and joined the Eleventh Circuit in concluding that neither case decided a new rule of constitutional law. Id.; see also In re Perez, 682 F.3d 930, 933-34 (11th Cir. 2012) ("Lafler and Frye are not new rules because they were dictated by Strickland.").

Although the Buenrostro decision concerned a petitioner's second or successive § 2255 motion, this Court finds that the Ninth Circuit's central holding regarding Lafler and Frye also applies to a petitioner's first § 2255 motion. As a result, Petitioner's claim does not meet the statutory criteria since Lafler and Frye did not announce new rules.

Moreover, the Court is unconvinced by Petitioner's argument that his motion is governed by Geise v. United States, 132 S. Ct. 2758 (2012), and not Buenrostro. (*Traverse* [Doc. 577] at 6; *Reply* [Doc. 580] at 1-2.) Petitioner mistakenly argues that the Supreme Court granted certiorari to this case, when in fact certiorari was denied.

See Geise, 132 S. Ct. 2758. Further, Petitioner fails to explain why this Court should find Geise, a case from the Second Circuit, more persuasive than Buenrostro, a Ninth Circuit decision.

Therefore, since neither Frye nor Lafler introduced a new constitutional rule of law, the Court finds that this ground of Petitioner's motion lacks merit.

### B. Petitioner's Sentence Was not Prejudiced Because of His Ethnicity

Petitioner also argues that his sentence reflects constitutionally-impermissible racially disparate treatment. (*Motion* at 36; *Traverse* at 7; *Reply* at 2.)

A statute, otherwise neutral on its face, must not be applied so as to invidiously discriminate on the basis of race. See Yick Wo v. Hopkins, 118 U.S. 356 (1886) (holding that racially selective enforcement of a facially-neutral law is presumptively unconstitutional). The Federal Sentencing Guidelines, therefore, may not be applied to federal prisoners "with a mind so unequal and oppressive as to amount to a practical denial by the State of equal protection." Id. at 375. However, in Washington v. Davis, 426 U.S. 229, 242 (1976), the Supreme Court stated that "[d]isproportionate impact . . . is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule . . . that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." Rather, the Supreme Court requires that a challenger to official government action provide evidence that "an invidious discriminatory purpose" motivated the alleged racial discrimination. Id.; see also Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 256 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

Petitioner argues that although his sentence was shorter than that of two of his white co-defendants, his sentence was the only one ordered to run consecutively rather than concurrently. (*Motion* at 36.) Petitioner contends that the Court's invidious

discrimination against Hispanics is the only explanation for the differences between his sentence and those of his co-defendants. (*Id.*)

However, Petitioner fails to produce any evidence that this Court maintained a racially-discriminatory intent against Petitioner when applying the Federal Sentencing Guidelines to his case. Petitioner's bare assertion that the terms of his sentence were different as a result of his ethnicity falls short of the Supreme Court's standard for establishing constitutionally-impermissible racial discrimination.

Further, the circumstances of his sentence contradict the claimed disparate treatment. Of the four defendants indicted for the fraud, the two defendants listed first in the indictment (reflecting Respondent's belief that they had a greater role in the fraud) received consecutive sentences: Petitioner and Defendant Randall T. Treadwell, who is Caucasian. And although Defendant Ricky D. Sluder's sentence of 60 months and 188 months ran concurrent, his sentence is still 101 months longer than Petitioner's consecutive sentence totaling 87 months. These facts belie any disparate treatment based on race.

Since Petitioner provides no evidence of the Court's alleged racially-discriminatory intent or purpose, Petitioner's § 2255 motion lacks merit.

### IV. CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** Petitioner's § 2255 motion to vacate, set aside, or correct his sentence. [Doc. 560.]

**IT IS SO ORDERED.**

DATED: July 24, 2013

_____
Hon. Thomas J. Whelan
United States District Judge